2017-20519 Reed v. Taylor et al. Good morning. I'm Mary Ann Nitsch and I represent Plaintiff Appellant Jerry Reed. Defendants repeatedly threatened Mr. Reed with criminal prosecution if he failed to hand over his son. Simply put, federal law prohibits this. The issues in this case have far-reaching consequences for the ability of states to obtain otherwise protected federal benefits. I'd like to spend my time today making clear that one, the plain language of the statute, and two, the Supreme Court's guidance in Keflar tell us that defendants' actions were simply beyond debate. Turning to the language of Section 407A, the statute uses the term other legal process as a catch-all phrase to mean legal process similar in nature to execution, levy, attachment, and garnishment. First, the ordinary and straightforward meaning of the phrase legal process plainly includes criminal prosecution. Indeed, criminal prosecution is the epitome of legal process. It's hard to imagine what could be more of a legal process than criminal prosecution. But second, criminal process is also other legal process. Criminal prosecution for non-payment of a debt is a practice exactly like execution, levy, and attachment. It's a mechanism used to effect transfers of property. We cited the historical use of debtor's prisons in our briefing, but there are also contemporary examples, like the possibility of imprisonment in states like Texas if you fail to pay child support, which is used as a means to encourage compliance with payment obligations. Did your client ever have to actually turn over his Social Security funds? He did not, did he? He did make payment with his Social Security funds, so... Did he get that back? Did he get that back? No, Your Honor. He's had to use his Social Security funds for the monitor. I thought they decided not to do that. No, they changed the law in June of 2015 with the amendment. His claims are from the relevant time period from 2012 to June of 2015, under which he made payments where the record shows that his sole source of income was Social Security disability benefits. I think I'd refer the Court to ROA 681-96, where you have the forms that were filled out on a monthly basis, where the front of the form shows, they're looking at what are your income sources for the month, Mr. Reed, and then the back, and one of it is, I got $600 to $700 in Social Security disability benefits, and the back of the form then says, okay, you owe 30 percent of that, sign here, and remember, if you don't pay, this is going to be, this could be prosecution for a third degree felony. So what are you seeking? We're seeking reversal of the District Court and remand, because the District Court misinterpreted the scope of Keffler. Qualified immunity shouldn't have been granted, and we'd like to return to the District Court and proceed on the merits. Turning back to the statutory construction, in fact, beyond the kind of plain meaning, other statutes confirm that criminal proceedings are similar in nature to processes employed to gain control over property. If you look at the Fair Debt Collections Practices Act, there's actually a provision that includes seizure, garnishment, along with arrest and imprisonment as a means of collecting debt. What's very clear from this provision, which is 1692E, is that garnishment, attachment, and criminal prosecution are all things of the same kind, a justem generis, which is consistent with the same type of things. In fact, defendants' only ground for arguing that criminal prosecution is not other legal process is that the result of a criminal conviction is not a court order requiring payment. At best, this is fiction. The Texas Code of Criminal Procedure clearly allows for restitution orders in criminal cases to any victim who suffered a direct loss because of the criminal offense. Restitution orders are, with another kind of provision that suggests restitution orders would be prohibited within the scope of 407A, is that for federal victim restitution, there's a specific carve-out from 407A, suggesting that it's specifically mentioned to overcome 408's prohibition on taking restitution from Social Security disability benefits. This argument about suffers from even a more fundamental flaw. So there's no ability to retrieve this from the agency or from the state because of immunity issues or what's the situation? Why is this only against the individuals that order this? It's only against the individuals because I was appointed at the district court and then withdrew and was appointed here and this was the posture I took the case in. I can't say directly why he didn't proceed against the agencies at the district court. Those claims were dismissed. Are those barred? I believe they probably would be against the agency if it's immunity or something. Yes, there would be Eleventh Amendment immunity, I imagine. If I could back up, forgive me if we're going to go back over ground. I just want to understand your argument. Your client is being threatened with criminal prosecution for failure to pay for the monitor, which would be a felony. Your argument is that threat of criminal prosecution is other legal process under the federal statute. Do you agree that Keffler is really going to govern how we read that statute? Is there any other case from our court, from the Supreme Court, that you can point to that will help us understand what other legal process means or is it just Keffler? I think it's just Keffler, but then also the Eighth Circuit's opinion in King. This court should adopt the Eighth Circuit's point, reasoning on the fact that threats are also other legal process. Since this is a qualified immunity case, we've got to look at controlling governing precedent. We can't really construct that from the Eighth Circuit, can we? I don't think you have to. I don't think we depend on the Eighth Circuit case to overcome qualified immunity. I recognize it's a high bar. We would argue that Mr. Reed meets this high bar. Keffler and the statute are so clear. You read the plain language of the statute, you read it, and you think, wow, I probably can't do this. This would be prohibited within the scope. Keffler even reaffirms that and speaks to that point, because if Keffler did establish a three-part test for other legal process, which is a judicial or quasi-judicial mechanism where control over property transferred to secure discharge of a liability, Mr. Reed's case fits exactly those things. Well, walk through those three and explain to me why your client's case fits in those three boxes. Defendants admit that criminal prosecution first is a judicial or quasi-judicial mechanism in their briefings. I don't think we need to address that. The record is clear that Mr. Reed transferred or passed control of a portion of his disability benefits solely due to their threats. On this summary judgment posture, we have to go with the evidence in the record, which shows that he started this because once he started receiving benefits and he stopped as soon as the threat of criminal prosecution was removed. He filed a sworn affidavit in connection with his first amended complaint where he said in paragraph 18, I'm paying this because I want to avoid threat of criminal prosecution. And the payment was to secure, third, to secure discharge of a liability created by the operation of chapter 841, the order of civil commitment, and the written program requirements for the Texas Civil Commitment Office. It's very distinguishable from Keffler where there was no binding liability on foster care children to pay the state of Washington for the cost of their care or say go to juvenile detention. Here there's a statute that says you have an obligation and if you don't fulfill this obligation, we could convict you for a third degree felony and you could go back to the state of Texas jail system. How was he charged for the third degree felony? Was he charged by indictment? Forgive me. He was not charged, Your Honor. So this case does deal only with threats of criminal prosecution. Okay, that's right. But he gave the money over, right? He signed the form under duress. Yes. So that's your position? Yes, he did. That would be that he signed the form under duress. And an example of his payment actually can be found, I believe, at record 392 where you can see that they actually accept his payment. It had to be via money order because my client is totally blind. He had to take a taxi to Fiesta. So there's clear record of the payment in the summary judgment record. What do we have in the record with respect to the threats? With respect to the threats, there are four individual defendants still in this case. For Defendant Taylor, who was the former executive director of the agency, you have the forms that she filled out and approved that specifically include within them, if you fail to pay, you then we have for the other three individual defendants are Mr. Reed's case managers at some point. And for each of them, there's something in the record with their signature and I believe Mr. Reed's signature where that threat was written down. I guess my point is, and maybe it's a bad question, is there reference in the record from the threats to the Social Security benefits? It's not as direct as if you fail to pay your Social Security disability benefits, but it is on a single piece of paper. The front is, what are your sources of income? And for Mr. Reed, it clearly shows in the record, his only source of income for this period was Social Security disability benefits. I know the district court noted he at one point received some income from a wife. That was outside the relevant time period in actually 2016 and all our claims end in with the statutory amendment in June 2015. If we cannot, if you cannot establish that there's clearly established law in your favor, is there some need to go ahead and state what the law is as we have the prerogative to choose which prong we address first to clarify that you can never take these benefits, that that Yes, definitely. If the court doesn't believe that this was clearly established, I would encourage it to write on the first prong that whether the right exists. I think it clearly does, obviously, but the law needs to be moved forward and just because they're the first person to violate it doesn't mean the next person shouldn't be on notice, that this is prohibited contact. Your briefing, pardon me, your briefing states that criminal prosecution of debtors has historically been used as legal process to collect obligations and secure the transfer of property. You also sort of described that as sort of archaic and you cite a journal article. Is there any I mean, granted it was a historic practice ages ago, but I think some, I was, I've been looking at this recently and there wasn't something particularly on point, but I would look to the, some of the more recent decisions in this circuit on the use of debtors prisons on bail and bond programs. I think those speak to the same issue. When I reviewed them, I didn't find something exactly as on point surveying the historic practices, but I thought they also referred to several very reputable sources, including the one I cited, that this process was impermissible. I'd like to address one final point in my opening, which is framing threats as merely, is as merely informing Mr. Reed that he had a payment obligation is unavailing on this record. There's no evidence in the record they weren't going to make good on the threats. In fact, everything in the to Mr. Reed. He's a civilly confined individual held at the discretion of the state and he had no obligation to wait to be prosecuted for a third degree felony to find out whether the state was going to actually, if they were serious about their threat. The state and a state official simply cannot threaten to do what they're not allowed to do and accomplish that this indirectly. Thank you. Thank you. You have your opening and you've saved time for rebuttal. May it please the court. This court should affirm the final judgment of the court below dismissing this case pursuant to qualified immunity. The sole issue before us today is whether the Appellees, who were employees of the Civil Commitment Office, should have to pay money damages in their individual capacities for informing Mr. Reed of what the Civil Commitment statute already says. What amount of money does the record reflect that he paid out of his social security for this monitoring device? Your Honor, it was a monthly payment. I don't know the dollar amount off the top of my head, but it was always between about $90 to $150 a month. But there's at least one example in the record where Mr. Reed did not pay for his GPS monitoring fees, and that's at page 650 of the record, and nothing happened to him. There was no prosecution. There was no legal process used. And so that a mere threat would violate the anti-attachment provision is an important point in this case. It's not clearly established. Do you think it's okay to threaten them as long as you don't actually, you can put the fear in them, but as long as you don't actually carry it out, it's not improper coercion under the statute? Two responses to that, Your Honor. First, because this is a case of qualified immunity, the Appellees in their positions and under the existing law at the time could not know that informing him of the possibility of criminal prosecution would violate the law. And the second point is that they were informing him that violation of the civil commitment terms may subject him to criminal prosecution. And it's at least noteworthy that the Appellees are not lawyers. They are not prosecutors. The civil commitment statute designates the sole authority to prosecute crimes under that statute to the local prosecutor's office or the special prosecutor's unit. And Mr. Reed did not identify any cases, and I believe there are none, that would suggest or analyze whether it's actually a third person using a legal process and not the debt holder and whether that would violate the anti-attachment provision. That's something that's unclear in the law as well as a threat. But I'm asking, do you think the law allows you to threaten, if it's not criminal prosecution, can you threaten that you will attach their home or do a levy against something? In the more modern traditional types of legal process, could you make those threats as long as they're empty under the law? I'm not asking qualified immunity. I'm asking what is the agency or the people from the agency, some of whom are still there, viewpoint regarding the law? Well, it would have to be a threat of the type of legal process that's actually prohibited by the statute. That was the hypo. It depends what legal process is being threatened. But if they threatened a legal process of one of those types of things within the anti-attachment provision, I think it would be a closer case. But there's still no controlling law that says that would violate it. So you could threat, but you'd still get qualified immunity if you threatened to attach their property or to take their car or their house or whatever. Is that right? You think you can do that, but you'd still get qualified immunity? Possibly, Your Honor. Well, should we clarify the law in this area so it's very clear now going forward? Well, because the civil commitment statute changed in 2015, I think that might be close to an advisory opinion because that claim is moved. So no, you're not trying to get any money at all from anyone for this, right? From government benefits? I'm sorry, Your Honor. I don't understand the question. Going forward, there's no money from the people to provide for their own commitment devices? I understand, Your Honor. That's not true. Civil committees are still required to pay their GPS fees. However, there is no potential criminal prosecution for failing to pay those fees. But they can still get attached or levied, can't they? If someone tried to attach or levy Social Security benefits, that would squarely fall within the anti-attachment provision. But it's not prohibited by the current statute, is it? Under the current statute, there's no legal process. They tell the civil committees, you owe these fees, and if they don't pay them, there's no criminal penalty, there's no legal process. Now, if someone then tried to file a lawsuit to attach to those benefits, then I suspect we would end up in court again because that squarely falls within the prohibition of the Social Security Act. And then you would say, we didn't know because it wasn't a third party bringing it, and so we still get qualified immunity. Wouldn't you do that? No, Your Honor. If we filed a lawsuit to attach to someone's Social Security benefits, I would not feel comfortable arguing that we're entitled to qualified immunity. However, the facts of this case fall so far outside the existing case law that it's not beyond debate that any type of criminal proceeding would fall within legal process under a reading of Keffler. Keffler mandates a restrictive interpretation of that process, and it says it's quasi-judicial or judicial order that is similar to those four types of attachment, execution, levy, or garnishment. Your counsel opposite said that you—correct me if I'm—correct them if this is incorrect—that you concede that a criminal prosecution is the kind of judicial process that Keffler is talking about. Clearly, you don't. Absolutely not, Your Honor. We do not concede that. Why is that? Well, the commonality between attachment, levy, garnishment, those types of processes is that it results in a court order of some type where the debt holder can then go collect on the debt. For example, could go to Mr. Reed's bank and say, I have this court order. You have to pay me money out of his account. There's nothing about a criminal prosecution for violating civil commitment terms that would allow the appellees or anyone at the office to collect on the debt. Mr. Reed could be convicted by a jury for failing to comply with civil commitment, could go to prison, and his GPS fees would remain unpaid. So that makes it very different from— There's no possibility of a court issuing an order attaching his funds to pay what he owes? Not as part of a criminal prosecution. Really? That's just not— I'm surprised. My opposing counsel mentioned restitution orders can be part of a criminal prosecution. However, the Texas Civil Commitment Office does not allow for restitution to the agency. And so that is simply a hypothetical that is— But if he's prosecuted for not paying for the monitor, right, he's prosecuted, that's a criminal prosecution. That's correct. Is that right? That just happens in state criminal court? That's correct. So if he's found guilty of that, isn't part of the toolkit of the court to order execution of his property to satisfy whatever he should have paid? I would disagree with that. Okay, I'm just asking. No? Criminal prosecution under the Civil Commitment Statute, which of course changed in 2015, it serves its own purpose. It's not a means of debt collection. It doesn't have a provision that allows for debt collection via criminal proceedings. The statute and the penalty of a third-degree felony serves the purpose of strict enforcement of civil commitment terms, because we are talking about sexually violent predators who've been civilly committed by a jury. And so the legislative history of the statute demonstrates that the purpose of the statute and the penalties under it are meant to serve strict compliance with civil commitment. Okay, and you're saying monetary penalties are not part of that scheme? That's correct. Even before it was part of the previous scheme? Yes, Your Honor. So that's different than federal, where they can put in their restitution. That's part of the sentence, is the restitution, or in fact, we had a case this week where they were trying to get the funds that the gentleman was earning in the prison as part of the restitution order. So he was earning money by working in the prison, and that's one of our cases from this week, I think, called Hughes, that's out to the world. So that's different than the state prosecution. They don't have the mechanism to put restitution on there? There's simply nothing in the civil commitment statute during that time period that allows for a restitution order, for example. And I want to draw the court back to the fact that there was no legal process used here. We're still talking about notifying Mr. Reed of what the statute says, that a prosecutor may choose to prosecute you. And as I said, he failed to pay his fees at least once, and nothing happened to him. And he points to the Eighth Circuit case and an unpublished Fifth Circuit case to support his argument that a mere threat would be enough to violate the anti-attachment provision. Well, and you would add to that, not just a mere threat, but a threat by somebody who doesn't actually have the authority to bring the prosecution? That's correct. That's correct. And the Appleby's did not make any statements to Mr. Reed to cause him to believe that they were prosecutors or that they would bring a civil action. The actual language of what Mr. Reed characterizes as a threat is at page 682 of the record. And it says, you may be subject to criminal prosecution. And Mr. Reed has been through the criminal justice system. He understands that prosecutors are who prosecute crimes. And if he didn't already know that from his personal experience, the civil commitment statute tells him who can prosecute crimes. And the conduct of a prosecutor's office cannot be impugned on the Appleby's, especially when we're talking about damages in their individual capacities. Does the record tell us anything about what prompted the change in, would you say, 2015? The record does not, Your Honor. I can say that that was not the only change to the statute. The criminal prosecution was removed, not entirely. There still are some civil commitment terms that can result in criminal prosecution. But that was removed as a penalty from most of the civil terms. But there's nothing in the record to tell us why the legislature made those changes. Do you have any comments on whether a common law process included things like debtor's prison and prosecution? Under the common law, I don't think that there's any body of discussion that analyzes the meaning of other legal process. Keffler is controlling. It says it's a restrictive meaning. And with regard to debtor's prisons, that's unconstitutional in Texas under Article 1, Section 18. And no court has ever found that this Texas civil commitment statute violated that, violates the Constitution in any way. And so the historical use of debtor's prisons is just not applicable, especially because in debtor's prison, someone in debt was put in jail and their body was physically held as collateral. And when they paid their debt, they were released from jail. Here, the appellees could not take the jury's conviction for a third-degree felony to Mr. Reed's bank and say, now you have to pay me. Mr. Reed was in control of his own money at all times. And that's what makes this situation so different from attachment execution levy or garnishment. Mr. Reed points to two cases to support his argument that it's clearly established that there's no qualified immunity here. He points to Philpott and Bennett, which are Supreme Court cases that predate Keffler. So it's unclear whether the analysis would hold up under the more restrictive reading in Keffler. But in those cases, the state agencies filed a lawsuit against a Social Security beneficiary to attach to their benefits. So in those cases, the explicitly prohibited conduct of the anti-attachment provision was used by the state agencies. But those cases give no guidance to officials in this conduct because they dealt with attachment actions. Forgive the hypothetical, but we might as well go down this road. Suppose there were a state criminal provision that allowed the state to proceed against someone in Mr. Reed's position, and part of the penalties for his failure to pay is attachment of his funds to make up for what he paid. In your view, would that fall within Keffler? It might, Your Honor. I think that that would be very close to falling within Keffler. I agree with you. I think your implicit argument is that the criminal prosecution may be one step back from what we've got in Keffler, or Philpott, where we have the state proceeding to attach the funds. That's clearly not okay under the statute, but I'm just moving it one step back and saying criminal proceeding, he didn't pay the funds, we win, he's convicted, we can attach the funds. Well, the focus of Keffler was on the actual legal process. So in your hypothetical, I don't think it's the criminal prosecution that would be considered legal process. It's the resulting order of attachment or garnishment, and that's what Keffler tells us to focus on. There's nothing about the actual process of legal, of third degree felony prosecution that causes the debt to be paid. Qualified immunity, the Supreme Court has warned, mandates that the law cannot be defined at a high level of generality, and the Supreme Court warns us against that again and again in Mullinex and recently in 2017 in White v. Pauley. While there doesn't have to be a specific case exactly on point, the existing case law has to deal with a situation, facts, and circumstances that's sufficiently specific such that the particular contours of the conduct here violate someone's rights beyond debate, and there simply does not exist case law that meets that burden, that bar. For example, Mr. Reed did not point to any case that analyzed whether a criminal proceeding could fall within the meaning of other legal process. There's also no case law that analyzes whether it's a third party that engages in a legal process and not the debt holder, and whether that could mean that the debt holder violated the anti-attachment provision somehow. So there's just no guidance out there to these appellees that their conduct back when it occurred would violate his rights. Qualified immunity is meant to protect all but those who knowingly violate the law, and the conduct here squarely falls within the protections of qualified immunity, and for these reasons the court should affirm. And if the court has no further questions, I'll return some of my time. Thank you, counsel. We have your argument. I'd like to briefly address four points in rebuttal. First, I believe page 12 of my opposing counsel's March 8, 2018 briefing is where I found support for the statement that quasi-judicial criminal prosecution would be quasi-judicial or judicial. They weren't talking about threats, but I believe they would not take the position that criminal prosecution isn't judicial or quasi-judicial if you go through Kepler's three-part test. Second, I'd like to talk about their position that Kepler was a sea change in Social Security protections and had a far more restrictive meaning of legal process. This is the same error that the district court fell into, that reading the court's use of the term restrictive referred to kind of a sea change in Social Security law that Philpott and Bennett were too broad, now we read this much more narrowly. That's not exactly correct. When the court referenced a more restrictive meaning, it was more restrictive than the Washington State Supreme Court's meaning, which said this representative payee process, which is explicitly authorized in other provisions and regulations of the Social Security Act, reading that to be prohibited, that's far too restrictive of a meaning. Philpott and Bennett were actually, I believe, reaffirmed by Kepler. They were both cited in the ending paragraphs of the opinion. We would argue that Kepler, although it gives guidance on what the meaning of other legal process is, we fit in that meaning and there's no canon suggesting Social Security protections are now interpreted restrictively. In fact, the exact opposite is true, Philpott's statement that there's a broad ban against use of these prohibited items against Social Security benefits. My third point I'd like to make is that everything in the record points to yes and that this summary judgment, this court had to assume that Mr. Reed believed that the defendants were going to pursue a prosecution. It's in a footnote in the summary judgment briefing that I believe the court could take judicial notice that in this period, the State of Texas prosecuted 50%, returned 50% of individuals who were civilly confined to state jails for a third degree felony. If the court would like more direction on that, I'd be happy to provide it. It was a credible and real threat and they distort the summary judgment posture by saying, oh, well, this is a hypothetical. We have to think they weren't going to do this, he didn't know. Everything that's in the record is yes, we have to go with it. Counsel, do you agree, I don't remember if you agreed with this or not, do you agree that the people in this case who actually made the threats do not have authority under the scheme as it existed then to actually bring criminal prosecution? Is that right? I think it's not in the record. I think that given the high number of criminal prosecutions that occurred from this office, that would be something that would be developed possibly on remand, that whether they actually have that authority or not, based on the... Do you think it matters for the qualified immunity? I don't think it matters, actually, though, at this stage, because other criminal prosecution for collection of debts, by nature, there would be maybe a third party making the threat, maybe not exactly the debt holder when there's criminal prosecution involved, but it's clearly prohibited because the result is the same. It's the transfer of an asset to secure an obligation and there's someone with authority or the debt holder believes reasonably has authority and they make it because it's so coercive. My final point I'd like to make is that the record does tell us there were constitutional, the state of Texas updated the statute because there were constitutional concerns. Many of them, it's in the actual preamble to the legislation. It's not in the briefing, but it's in some of the summary judge earlier briefing that the preamble to it, I believe, says if there's significant constitutional concerns, I won't represent that they had to do with this case. I believe there are some other concerns having to do with some of the other that I think it's a void for vagueness challenge about whether you can be convicted for just any written requirement. In the five seconds we have left, let me end where you began. When you first stood at the podium, you said 407A, quote, plainly includes criminal prosecution. You also seem to concede as an interpretive matter that other legal process must be similar to execution, levy, attachment, garnishment. Those are all sort of, they're mechanisms. These are these enumerated judicial rips and convince me anew how the threat of criminal prosecution falls is similar, because you agree they got to be similar to those enumerated. I'm not there yet. Well, I think there's a couple of things. First is the Supreme Court's guidance in Keffler of how do we define other legal process? What are the similar characteristics that these three things all shared? Quasi-judicial secures transfer of property and secure discharge of a liability. All three things are present in this case. Also if you look to, I think you see in other statutes where imprisonment or a threat of imprisonment is used similarly or treated similarly, like in the Fair Debt Collection Practices Act, as levy or attachment. It's not, or other legal mechanisms, it's other legal processes and criminal prosecution is a legal process that's similar under the court's guidance in Keffler. Thank you. So under Fair Debt Collection, if you threaten criminal, it's like other legal process? It's other legal, what's the term? So it's, what the provision is, is 1692E4, and it's things that are of the, in the Fair Debt Collection Practices Act, the prohibitions are, if you're a creditor, yes you can tell someone you have to pay their debt, that's not illegal. It's threats of a certain nature that are maybe deceptive or false, and the Fair Debt Collection Practices Act represents an understanding that a threat of criminal prosecution, like seizure or garnishment or attachment, can be, when false or deceptive, can constitute a means of unfair debt collection. But that's specified? That's specified? Yes, I would, I would. Yes. Okay. Thank you very much counsel, we have your argument. We appreciate counsel on both sides' arguments today that were helpful to the court, and we know that your court appointed Ms. Nish, and we appreciate it. Thank you. We're going to take a brief recess.